IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION,<br>      Plaintiff,<br><br>   and<br><br>DALEENA BOND,<br>      Plaintiff-Intervenor<br><br>v.<br><br>DOLGENCORP OF TEXAS, INC., d/b/a<br>DOLLAR GENERAL and DOLLAR<br>GENERAL CORP.,<br>      Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br><br><br><br>CIVIL ACTION NO. H-04-3787<br><br><br><br><br><br>JURY TRIAL |

NOTICE OF FILING SUPPLEMENTAL
EXPERT REPORT OF BYRON L. HOWARD, M.D.

COME NOW Defendant Dolgencorp of Texas, Inc., and hereby notifies the

Court of its Filing of the Expert Report of Byron L. Howard, M.D. attached hereto

as Exhibit A.

Respectfully submitted,


/s/ Joel S. Allen
Joel S. Allen, Attorney-in-Charge
State Bar No. 00795069
S.D. Tex. No. 18532

DALDMS/549347.1

Ronald E. Manthey
State Bar No. 12927400
S.D. Tex. No. 18049
Melissa M. Hensley
State Bar No. 00792578
S.D. Tex. No. 24949
Elizabeth K. Dugas
State Bar No. 24032505
S.D. Tex. No. 32419

BAKER & MCKENZIE LLP
2001 Ross Avenue, Suite 2300
Dallas, Texas 75201
Telephone:  (214) 978-3000
Facsimile:  (214) 978-3099
**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served upon all counsel of record through the court's CM/ECF system on this 30th day of September, 2005, as follows:

Timothy M. Bowne
Senior Trial Attorney
Attorney-in-Charge
Equal Employment Opportunity
Commission
1919 Smith Street, 7th Floor
Houston, Texas 77002

Rhonda D. Walls
Levin & Atwood LLP
20501 Katy Freeway, Suite 217
Katy, TX 77450

Jane Rye McQueeney, PLLC
1918 Stormcroft Circle
Katy, TX 77450

/s/ Joel S. Allen
Joel S. Allen

DALDMS/549347.1

# BYRON L. HOWARD, M.D.

ADULT PSYCHIATRY & PSYCHOTHERAPY
ADMINISTRATIVE & CONSULTING PSYCHIATRY

**Mail and billing:  P.O. Box 2732, Bandera, Texas  78003.**

September 25, 2005

Elizabeth K. Dugas, J.D. / Joel S. Allen, J.D.
Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201 USA

RE:    Civil Action No. H-04-3787; <u>Equal Employment Opportunity Commission v. Dolgencorp of Texas, Inc., d/b/a Dollar General and Dollar General Corp.</u>

Per your request, the following is my supplemental report of August 1, 2005, related to the claims raised by Daleena Bond in the above referenced lawsuit.

**Additional Materials List:**

- Transcript of Daleena Bond deposition of 07/07/05, page 2-263.
- Video deposition of Daleena Bond, 09/07/05, Volume 1-5 Video Disc.
- Medical records:  Suzanne Somers, Ph.D. (09/28/03 – 08/29/05).
- Medical records:  West Oaks Hospital and Vikram Melira, M.D. (10/25/03 – 10/31/03 and 11/03/03 – 11/11/03).
- Medical records, outpatient:  Vikram Mehra, M.D. P.A. (11/10/03).
- Medical records:  Robert M. Gordon, M.D. (10/06/03 – 10/22/23 and 11/14/03).
- Preliminary expert report by Byron L. Howard, M.D. (08/01/05).

**Relevant Information Summary of the Above Records and Examination of her Video Deposition 09/07/05:**

It is my opinion that the video deposition of Daleena Bond of approximately five hours included sufficient opportunity to review the mental status of Ms. Bond and much material that reflected historical descriptions of her patterns of intense self-destructive behavior in relationships. Coming out of early deprivation, such as her father being killed when she was six years old, descriptions of her mother being good to her for the first 13 years and then becoming alcoholic, forcing her to stay with her grandmother, discovering at later periods in life that her mother remained a severe alcoholic, which produced chronic stress in Ms. Bond, intense relationships with seven men in her life, "watching my dad die and seeing the last days of his life", and a stepfather who is currently dying of cirrhosis of the liver from his alcoholism "after watching my dad die." In addition, she reports that her stepfather, watching her, said, "You are not my daughter, not the person that left here (Florida)."

ONE TURTLE CREEK VILLAGE • STE. 616 • 3878 OAK LAWN AVENUE • DALLAS, TX 75219 • (214) 526-8306 • FAX (214) 526-8361

Byron L. Howard, M.D.
09/25/05 – EEOC v. Dolgencorp of Texas, Inc.
Supplemental Report, Page 2

**Past History:**

She reported traumatic marriage relationships beginning with Frank Perry on June 8, 1983, and with her first child Cynthia dying on July 5, 1983. In that context, she continued to have struggles with this alcoholic husband. Chronic medical conditions were not uncommon in her family with Mr. Perry being an alcoholic, her developing kidney poisoning, and medical records in which she also noted having toxemia in her first pregnancy, which was perhaps related to the premature loss of her first child. "I nearly died from all that."

It is also clear that the choice of her boyfriends and husbands were extraordinarily unsuccessful and stressful with them, mostly wanting to party. The husband and father of her children would become violent and break things when frequently drunk.

Her continued selection of destructive husbands and partners was the result of a very early chaotic life environment, which she described in her deposition as being full of significant, adverse and painful affects. Her affective responses also reflected an extremely manipulative and hardened quality, describing Mr. Mendonia as, "He was a jailbird, in and out most of the time, burglary, stayed in jail more than I had seen ... My kids suffered like I did." This chaos was reflected in her children having to be placed in custody of Florida HRS (Child Protective Custody), as he had sexually assaulted them. In fact, she reported that she had gone to Florida to her dad's to get a double barrel shotgun to kill him. The result of this was followed by the state refusing to not allow her to have possession of her daughters and severed parental rights. In the context of the deposition she demonstrated affect and mood of sadness, depression and emotional pain. She testified, "I hired an attorney and then he said it was too late." Additional emotional pain was noted to be that their records were sealed and she did not know where her daughters were, and could not do anything to find them until their legal age of 18. In this context, she continued to be intermittently angry, sad and projecting blame and rage toward her previous husband.

Ms. Bond artificially tried to liken those life experiences to her experience at Dollar General Store "to keep from losing my life, and it did not do me no good either".

The emotional trauma and prospect of physical trauma in her family relationships, both primary and her secondary family relationships, are projected onto and reflected onto other people in authority and responsibility in her environment, such as being jailed at various times or the police being called amidst family crises, such as with her mother "going crazy again." This resulted in the police taking her to jail rather than the mother. Also, various warrants related to bad checks and impulsive suicidal attempts by her married adult sister were sources of painful affects, and who maintains an alcohol abuse situation.

Byron L. Howard, M.D.
09/25/05 – EEOC v. Dolgencorp of Texas, Inc.
Supplemental Report, Page 3

In the context of this deposition, when Ms. Bond was asked to compare her mental anguish over her job with Dollar General versus the loss of children and other family destructive events, she indicated that Dollar General had allowed a situation that was much harder to deal with because their employee "broke her trust", and that, she indicated, was more important and upsetting than her sister drinking in a way that might end her life or other painful behaviors noted above. There are many examples of statements like this in the video deposition that are beyond believability and did not appear to be truthful.

It appeared that the most recent relationship with Chuck Lee deteriorated because of her behavior, rather than those events occurring at Dollar General, with both Chuck and her competing for who could drive the other away from each other and Ms. Bond's agreement to give half of the proceeds that might come out of this legal suit to him was to prevent being "thrown out on the street 100 miles away from home with no money and no transportation."

Ms. Bond placed herself in a position of dependency upon her mother, and later her sister and a brother-in-law, who sexually exposed himself to her. It was her opinion that "he was simply a drunk 'druggie' " as compared to the alleged "overwhelming behavior" of Dollar General employee Bob, "while Bob done all his stuff stone cold sober."

**Opinions:**

It is my opinion that Ms. Bond was manipulative or potentially calculating and self-servicing in her statements made to her live-in boyfriend and Suzanne Somers, Ph.D., her therapist.

It is my opinion that hospitalizations in Houston at West Oaks Hospital and St. Catherine's were because of considerations of possible suicidal thoughts, otherwise altered mental states of self-protective mode and her malingering.

It is my opinion further that the sworn testimony of Ms. Bond in which she stated, when asked how much financial damages she was asking for in her law suit, she said, "No ma'am, I have not even thought about it. I did not go into it for the money, I went in to see what my rights were", but then could accurately reflect on highly technical questions about what made a difference in how much money she got if she prevailed in this lawsuit.

It is my opinion that her professional relationship with Suzanne Somers, Ph.D. has been extremely supportive to the plaintiff in her case, if she is stating truthfully that "Suzanne put maybe two years, but (that) I could probably never fully recover. She just said 'don't know'."

It is my opinion that Ms. Bond has very substantial personality and/or psychiatric disorder symptoms causing a chaotic lifeline with major emotional and mental distortions affecting her judgment in choice, especially in men friends and husbands.

Byron L. Howard, M.D.
09/25/05 – EEOC v. Dolgencorp of Texas, Inc.
Supplemental Report, Page 4


It is my opinion that her rage toward Frank, one of her previous husbands, is projected onto other males in her environment whom she perceives to cause her mental anguish, including those at Dollar General. Ms. Bond was going so far as to say that she continued her employment after the alleged conditions occurred.

It is my opinion that she has impaired judgment at this time consistent with transient and fluctuating borderline psychotic conditions with intermittent delusions and distortions in reality testing, which has been reflected in diagnoses by psychiatrists and their recommended treatment.

It is further my opinion that her treating psychologist Suzanne Somers, PhD. appears to have a substantial overreaching identification with her patient's pain and distress and may project entire blame, or substantial parts of it, onto Dollar General and others in roles of corporate responsibility, and with Dr. Somers' minimization of the characterological mental conditions consistent with borderline psychiatric distortions, primitive mental mechanisms, such as splitting, projection, rationalization and conscious distortion, and has been in a pathologically supportive role with this person.

It is my opinion, throughout several hours of review of this video deposition, that even under stressful circumstances and evocative questioning that Ms. Bond exhibited no signs or symptoms of known post traumatic stress disorder, or no observable symptoms of post traumatic stress disorder, such as startle reactions, gross anxiety states other than her subjective statements, and with examples of long-standing painful affective states not significantly related to Dollar General, but to more important developmental family and self-defeating experiences. Further, the presence during her video deposition of Rick Redmer was not causative of anticipated emotional responses on her part.

It is further my opinion that without meaningful psychotherapy and medication management it would be unlikely that Ms. Bond will develop more self-adaptive learning to help with her destructive projective distortions, unrealistic fantasies and continued regressive paranoid themes of thought and feeling, including malingering, as well as others as described above, and which arise out of her own early and ongoing severe developmental stresses.

It is my opinion that the above is consistent with all materials and records reviewed and it is not expected that additional information would alter these opinions in any significant manner.

I reserve the right to review any additional relevant information, which could significantly alter my opinions.

Byron L. Howard, M.D.